No. 24-10956-J

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

LASHONDA PEEPLES,

*Plaintiff – Appellant,*

v.

NATIONAL DATA RESEARCH, INC. d/b/a INTEGRASCAN,

*Defendant – Appellee.*

Appeal from the United Stated District Court
for the Northern District of Georgia

No. 1:22-cv-01764-SCJ-CMS

---

**APPELLANT'S OPENING BRIEF**

---

Levi Y. Eidelman
CONSUMER ATTORNEYS
300 Cadman Plaza West, Suite 12049
Brooklyn, New York 11201
T: (718) 360-0763

David A. Chami
CONSUMER ATTORNEYS
8245 North 85th Way
Scottsdale, Arizona 85258
T: (480) 626-2359
*Attorneys for Appellant Lashonda Peeples*

i

**No. 24-10956-J**
**LASHONDA PEEPLES V. NATIONAL DATA RESEARCH, INC. D/B/A**
**INTEGRASCAN**

**CERTIFICATE OF INTERESTED PERSONS AND**
**CORPORATE DISCLOSURE STATEMENT**

Plaintiff-Appellant Lashonda Peeples, by and through undersigned counsel, and pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, hereby files this Certificate of Interested Persons and Corporate Disclosure Statement. Appellant is not a publicly held corporation and has no parent corporations, affiliates, or subsidiaries with an interest in the outcome of this case. Identifiable interested parties to the action are:

| | |
|---|---|
| Lashonda Peeples | Plaintiff – Appellant |
| David A. Chami | Counsel for Appellant |
| Levi Y. Eidelman | Counsel for Appellant |
| National Data Research, Inc. d/b/a IntegraScan | Defendant – Appellee |
| James W. Penland | Counsel for Appellee |

ii

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Lashonda Peeples ("Plaintiff") respectfully requests oral argument. This appeal will require the Court to resolve issues about the scope and application of federal legislation, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"). These issues will require this Court to interpret statutory language and its prior opinions in light of a unique factual circumstance that has important implications for the law governing consumer reporting. Plaintiff respectfully suggests that oral argument may assist this Court in resolving these issues.

## <u>TABLE OF CONTENTS</u>

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE..................................................................2

I.    Overview........................................................................................2

II.   Statement of the Facts ..................................................................3

    A.  Plaintiff is issued a citation that is later expunged from public records ...3

    B.  Plaintiff applies to a pre-med program and is required to obtain a criminal background report from NDR as a condition of her admission..4

III.  Course of Proceedings and Disposition in the District Court ..................9

IV.  Statement of the Standard of Review ........................................14

SUMMARY OF THE ARGUMENT ................................................16

ARGUMENT ..................................................................................18

I.    The FCRA's definition of "consumer report" includes a report issued for any purpose identified in its "Purpose Clause." The district court erred in ruling that, as a matter of law, the Report did not meet the definition of consumer report because undisputed evidence showed that the Report was issued for a purpose covered by the Purpose Clause. ...18

    A.  The text of the FCRA and this Court's previous rulings establish that a CRA's report fits within the FCRA's definition of "consumer report" whenever it is prepared for a purpose identified in the Purpose Clause of § 1681a(d). ..............................................18

    B.  The district court's interpretation of the meaning of "consumer report" under the FCRA depends upon a misreading of Eleventh Circuit case law. ..............................................28

    C.  The district court's interpretation of "consumer report" is inconsistent with case law from other federal circuit courts......................................32

    D.  The district court's interpretation of "consumer reports" would undermine the ability of the FCRA to regulate consumer reporting. .....35

II.   It is materially misleading to report that a consumer has a criminal record when that record has been expunged. The district court erred by

**concluding that Plaintiff could not prevail on her claim under § 1681i(a) because it was accurate for NDR to report the expunged conviction with the notation that the conviction was expunged because such reporting could create an erroneous impression that Plaintiff's criminal history was still available in public records.** ...........................................................**37**

A.  Under the FCRA, a consumer report is not accurate if it creates the potential for misunderstanding or is otherwise materially misleading. ...38

B.  A reasonable jury could find that the Report was materially misleading because it created the potential for misunderstanding about whether the public records of South Carolina included any criminal record for Plaintiff. ...................................................................................41

**Conclusion and Relief Requested** .......................................................**50**

# <u>TABLE OF CITATIONS</u>

**Cases**

*Aldaco v. RentGrow, Inc*.,
   921 F.3d 685 (7th Cir. 2018) ................................................................ 46, 47, 48

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................14

*Bailey v. Equifax Credit Info. Servs.*,
   No. 1:14-CV-00797-MHC-JCF, 2016 U.S. Dist. LEXIS 196516
   (N.D. Ga. Nov. 28, 2016) ................................................................................32

*Benjamin v. Experian Info. Solutions, Inc*.,
   561 F. Supp. 3d 1330 (N.D. Ga. 2021) ...........................................................32

*Brown v. City of Clewiston*,
   848 F.2d 1534 n.12 (11th Cir. 1988) ...............................................................15

*Bugoni v. Employment Background Investigations, Inc.*,
   No. SAG-20-1133, 2022 U.S. Dist. LEXIS 54136 (D. Md. Mar. 25, 2022) .......48

*Bush v. RoundPoint Mortg. Serv. Corp*.,
   122 F. Supp. 3d 1347 n.3 (M.D. Fla. 2015) .....................................................39

*Cahlin v. General Motors Acceptance Corp*.,
   936 F.2d 1151 (11th Cir. 1991) ............................................................ 18, 37, 39

*Carlson v. FedEx Ground Package Systems, Inc.*,
   787 F.3d 1313 (11th Cir. 2015) ................................................................ 14, 15

*Cavaliere v. Burke*,
   No. 94-20275, 1995 U.S. App. LEXIS 43258 (5th Cir. Mar. 13, 1995)..............34

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................14

*Chaitoff v. Experian Info. Sols., Inc*.,
   79 F.4th 800 (7th Cir. 2023)............................................................................48

*Christian Coalition of Florida, Inc. v. United States*,
   662 F.3d 1182 (11th Cir. 2011) .......................................................................27

*Clark v. Coats & Clark, Inc.*,
   929 F.2d 604 (11th Cir. 1991).........................................................................14

*Coleman v. Experian Info. Sols., Inc*.,
   655 F. Supp. 3d 1285 (N.D. Ga. 2022) ...........................................................31

*Collins v. Experian Info. Sols., Inc.*,
  775 F.3d 1330 (11th Cir. 2015) ................................................................. passim
*Comeaux v. Brown & Williamson Tobacco Co.*,
  915 F.2d 1264 (9th Cir. 1990) ...............................................................33
*Dickerson v. New Banner Inst., Inc.*,
  460 U.S. 103 (1983) .................................................................................49
*Environmental Def. v. Duke Energy Corp.*,
  549 U.S. 561 (2007) .................................................................................23
*Erickson v. First Advantage Background Servs.*,
  981 F.3d 1246 (11th Cir. 2020) ................................................................ passim
*FDA v. Brown Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) .................................................................................26
*Gorman v. Wolpoff & Abramson, Llp*,
  584 F.3d 1147 (9th Cir. 2009) ......................................................... 40, 49
*Heath v. Credit Bureau of Sheridan, Inc.*,
  618 F.2d 693 (10th Cir. 1980) .................................................................34
*Ippolito v. WNS, Inc.*,
  864 F.2d 440 (7th Cir. 1988) ...................................................................33
*Johnson v. Equifax, Inc.*,
  510 F. Supp. 2d 638 (S.D. Ala. 2007) ............................................. 12, 31
*Lazarre v. JPMorgan Chase Bank, N.A.*,
  780 F. Supp. 2d 1320 (S.D. Fla. 2011) ....................................................32
*Losch v. Nationstar Mortg.*,
  995 F.3d 937 (11th Cir. 2021) ..................................................... 18, 38, 40, 43
*Mintun v. Equifax Info. Servs., LLC*,
  535 F. Supp. 3d 988 (D. Nev. 2021) .............................................. 34, 35
*Nagle v. Experian Info. Sols., Inc*,
  297 F.3d 1305 (11th Cir. 2002) ...............................................................18
*Nunnally v. Equifax Info. Servs.*, LLC,
  451 F.3d 768 (11th Cir. 2006) .................................................................. passim
*Obabueki v. Choicepoint, Inc.*,
  236 F. Supp. 2d 278 (S.D.N.Y. 2002) .....................................................49
*Patel v. U.S. Attorney Gen.*,
  971 F.3d 1258 (11th Cir. 2020) ...............................................................23

*Popik v. American Int'l Mortg. Co.*,
  936 F. Supp. 173 (S.D.N.Y. 1996) .......................................................35

*Rumbough v. Experian Info. Sols., Inc.*,
  No. 6:16-cv-1305-Orl-18GJK, 2018 U.S. Dist. LEXIS 234675
  (M.D. Fla. Feb. 14, 2018) ....................................................................32

*Saunders v. Branch Banking*,
  526 F.3d 142 (4th Cir. 2008) ....................................................... 40, 49

*Seamans v. Temple Univ.*,
  744 F.3d 853 (3d Cir. 2014) ........................................................ 39, 49

*Seckinger v. Equifax Info. Servs.,*
  *LLC*, No. CV 415-304, 2018 U.S. Dist. LEXIS 50780
  (S.D. Ga. Mar. 27, 2018) ............................................................. 12, 31

*Smith v. United States*,
  508 U.S. 223 (1993) ............................................................................22

*St. Paul Guardian Ins. Co. v. Johnson*,
  884 F.2d 881 (5th Cir. 1989) ..............................................................33

*Traveler v. Glenn Jones Ford Lincoln Mercury 1987, Inc.*,
  No. CV-05-0817-PHX-SRB, 2006 U.S. Dist. LEXIS 2631
  (D. Ariz. Jan. 24, 2006) .....................................................................35

*U.S. Securities & Exch. Comm'n v. Big Apple Consulting USA, Inc.*,
  783 F.3d 786 (11th Cir. 2015) ............................................................22

*United States v. Castro*,
  837 F.2d 441 (11th Cir.1988) .............................................................27

*Yang v. Government Emps. Ins. Co.*,
  146 F.3d 1320 (11th Cir. 1998) ........................................ 3, 16, 19, 20

*Young v. Keel*,
  431 S.C. 554 (S.C. Ct. App. 2020) .....................................................42

**Statutes**

15 U.S.C. § 1681 ............................................................................ passim
28 U.S.C. § 1291 ....................................................................................x
28 U.S.C. § 1331 ....................................................................................x
S.C. Code § 34-11-95......................................................................42, 43
S.C. Code §§ 22-5-910.....................................................................42, 43

**Rules**

FRAP 4(a)(1)(A) ..........................................................................................x

FRCP 56 ...................................................................................................14

**Other Authorities**

Advisory Opinion of the Consumer Financial Protection Bureau,

    12 CFR Part 1022, Fair Credit Reporting; Background Screening....................43

Webster's Third New International Dictionary

    1396, 1771 (3d ed. 1961)......................................................................39

## **JURISDICTIONAL STATEMENT**

This case arises from Plaintiff's claims against Defendant-Appellee National Data Research, Inc. d/b/a Integrascan ("NDR") under the FCRA. The district court had jurisdiction of this case under 28 U.S.C. § 1331 because Plaintiff's claims arose under federal law. The district court's Judgment [Doc. 74] of February 27, 2024 was final and appealable because it dismissed all of Plaintiff's claims. Plaintiff filed his Notice of Appeal [Doc. 75] in the district court on March 26, 2024, making it timely under Federal Rule of Appellate Procedure 4(a)(1)(A). Because Plaintiff appeals from a final order of the district court, this Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

I.    The FCRA's definition of "consumer report" includes a report issued for any purpose identified in its "Purpose Clause." Did the district court err in ruling that, as a matter of law, the Report did not meet the definition of consumer report because undisputed evidence showed that the Report was issued for a purpose covered by the Purpose Clause?

II.    It is materially misleading to report that a consumer has a criminal record when that record has been expunged. Did the district court err by concluding that it was accurate for NDR to report the expunged conviction with the notation that the conviction was expunged because such reporting could create an erroneous impression that Plaintiff's criminal history was still available in public records?

## STATEMENT OF THE CASE

### I.    Overview

When Plaintiff applied for admission to a university program in 2021, the university required that she purchase a criminal background report from NDR and submit it before she could enroll. NDR's report was inaccurate because it included a 2003 misdemeanor citation that had been expunged from official public records in 2019. When Plaintiff disputed the inclusion of the citation, NDR amended her report to add the notation "expunged" next to its record of the citation. Although Plaintiff was admitted to the program, she had to defer her enrollment and was only able to remain in the program for one semester because she could not submit an inaccurate background report and because the university would only accept a report prepared by NDR.

Plaintiff alleges that NDR violated the FCRA when it reported her expunged citation and when it would not remove the citation from the report after she disputed its accuracy. Relying upon a report and recommendation from its magistrate judge, the district court granted summary judgment to NDR for two reasons: (1) it concluded that NDR's report was not a "consumer report" within the meaning of the FCRA because it was issued to Plaintiff and not to a third party, even though NDR prepared it with the expectation that Plaintiff would submit it to the university; and

(2) it concluded that it was not inaccurate to include an expunged conviction in a consumer report.

Both of the district court's conclusions are erroneous as a matter of law. First, NDR's report fits within the FCRA's meaning of "consumer report" as explained by this Court in *Yang v. Government Emps. Ins. Co.*, 146 F.3d 1320 (11th Cir. 1998) and *Nunnally v. Equifax Info. Servs.*, LLC, 451 F.3d 768 (11th Cir. 2006), and, contrary to the district court's analysis, this Court's opinion in *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330 (11th Cir. 2015) is not controlling authority here. Second, the district court's analysis of the issue of accuracy also depends upon inapplicable authority, especially cases focused on a provision of the FCRA that is not implicated by Plaintiff's claims.

## II.    Statement of the Facts

### A.    *Plaintiff is issued a citation that is later expunged from public records.*

In 2003, Plaintiff was traveling in her car with her boyfriend, who was driving. At the time, she did not know that his license had been suspended. When a police officer pulled him over for speeding and discovered the license suspension, the officer asked Plaintiff if she had known that her boyfriend did not have a currently valid license. When Plaintiff denied any knowledge of it, the officer concluded that Plaintiff was not being truthful and issued her a citation for giving false information during a traffic stop ("the Citation"). Complaint [Doc. 1] at ¶¶ 12-17. Plaintiff

appeared in court, was found guilty of the offense and was fined $300. *Id.* at ¶¶ 18-19.

In 2019, Plaintiff applied for the expungement of the Citation, and an expungement order was issued. Complaint [Doc. 1] at ¶¶ 20-21. Under applicable South Carolina law, such an expungement order requires that all records relating to the offense and related proceedings be entirely removed from public records. *Id.* at ¶¶ 22-23; see also SC Code § 22-5-910. Consequently, as a matter of South Carolina law, the expungement order established that the offense was no longer a matter of public record. Complaint [Doc. 1] at ¶ 24.

### B. *Plaintiff applies to a pre-med program and is required to obtain a criminal background report from NDR as a condition of her admission.*

Plaintiff has wanted to become a physician since she was a child. Plaintiff's Statement of Additional Facts [Doc. 64], No. 37. Plaintiff took some initial steps towards that goal by earning bachelor's and master's degrees and by working as a healthcare consultant in the pharmaceutical field. Complaint [Doc. 1] at ¶ 26. In December 2021, Plaintiff sought to take another step towards her professional aspiration, applying to enter a pre-med program at the American International College of Arts and Sciences – Antigua ("AICASA"), which is affiliated with the medical school at American University of Antigua ("AUA"). *Id.* at ¶ 27; Plaintiff's Statement of Additional Facts [Doc. 64], No. 19. She hoped that her completion of

4

the program would improve her chances of attending AUA's medical school. Plaintiff's Statement of Additional Facts [Doc. 64], No. 19.

As part of its application process, AICASA required prospective students to submit a criminal background report. Plaintiff's Statement of Additional Facts [Doc. 64], No. 24. AICASA would only accept criminal background reports prepared by NDR, which is a "consumer reporting agency" ("CRA") within the meaning of the FCRA. Plaintiff's Statement of Additional Facts [Doc. 64], No. 22. Selling criminal background reports directly to students is a key part of NDR's marketing strategy. Deposition of Terry Sweet [Doc. 52] ("Sweet Dep.") at p. 15. When an educational institution wants to obtain criminal background reports on its prospective students, as a condition of their admission, it can make arrangements with NDR, and a link to NDR's website will be furnished to the institution's applicants. Plaintiff's Statement of Additional Facts [Doc. 64], No. 22. The institution instructs students to follow the link, purchase a criminal background report from NDR, and submit that report to the institution in connection with their applications for admission. Plaintiff's Statement of Additional Facts [Doc. 64], Nos. 21-22. NDR knows that college applicants are purchasing criminal background reports for the purpose of providing them to colleges and universities. Plaintiff's Statement of Additional Facts [Doc. 64], No. 25.

AICASA has made such arrangements with NDR. Plaintiff's Statement of Additional Facts [Doc. 64], No. 24. Thus, when applying to AICASA, Plaintiff followed the link from AICASA's website to NDR's website and entered the dedicated Student Portal on NDR's website to order a criminal background report. Deposition of Lashona Peeples [Doc. 53] ("Peeples Dep.") at p. 20. NDR issued a report to Plaintiff, which was dated December 14, 2021. (the "Report"). Plaintiff's Statement of Additional Facts [Doc. 64], No. 22; Defendant's Statement of Material Facts [Doc. 57-1], Nos. 3 & 5.

The Report was inaccurate in two principal respects. First, it stated that Plaintiff had a record of a criminal offense: the Citation. Defendant's Statement of Material Facts [Doc. 57-1], Nos. 8 & 9. The Report included the Citation even though it had been expunged from South Carolina's public records two years earlier. Second, the Report misstated the sources from which it was derived. Under the heading, "DATABASES SEARCHED," the Report listed the names of approximately 250 courts, bureaus, and corrections departments across dozens of states. Sweet Dep. [Doc. 52] at p. 96. But NDR did not rely upon any of these hundreds of sources. Instead, it relied entirely upon a single source, a database vendor known as Tracers, which sells its services through the website "www.tracers.com." Plaintiff's Statement of Additional Facts [Doc. 64], Nos. 29 & 30. Tracers is not regulated by the FCRA and does not warrant the accuracy of its

6

information. See Sweet Dep. [Doc. 52] at pp. 21-29, 91. NDR's sole owner and operator, Terry Sweet, does not know whether Tracers' database is updated to account for expungements. Sweet Dep. [Doc. 52] at 50.

Immediately upon receiving the Report, Plaintiff emailed NDR and disputed its accuracy, asserting that the 2003 Citation had been expunged and that she no longer had a criminal history in the official public records of South Carolina. Defendant's Statement of Material Facts [Doc. 57-1], No. 7. Sweet responded by email the next day, expressing that – although the record had been expunged – NDR is "not required to remove the record form [sic] our data base and will not remove it… This has been our policy for 30 years…" Sweet Dep. [Doc. 52] at p. 9, 104; Plaintiff's Statement of Additional Facts [Doc. 64], No. 26.

Although Plaintiff had ordered the Report for the purpose of sending it to AICASA in support of her application, she decided that she could not submit any report that included the Citation, believing that AICASA might not permit her to enroll if it discovered that she had been convicted of an offense involving false statements. Peeples Dep. [Doc. 53] at p. 29. Peeples submitted another dispute to NDR, but NDR insisted that it would not remove the expunged record. *Id.* at p. 104; Plaintiff's Statement of Additional Facts [Doc. 64], No. 26. NDR informed her that it never removed any criminal records from its reports. Peeples Dep. [Doc. 53] at p. 35. Eventually, NDR modified the Report to add the word "EXPUNGED" next to

the entry for the Citation. Defendant's Statement of Material Facts [Doc. 57-1], No. 9; Plaintiff's Statement of Additional Facts [Doc. 64], No. 28. Plaintiff purchased a copy of the modified Report. Plaintiff's Statement of Additional Facts [Doc. 64], No. 28. Despite her purchase, she did not submit the modified Report to AICASA. Plaintiff's Statement of Additional Facts [Doc. 64], No. 36.

Plaintiff and NDR have differing accounts of whether the Report remains available through NDR's website. NDR asserts that, in response to Plaintiff's disputes, it blocked the Report in its files so that no-one could view the Report or obtain a copy of it. Defendant's Statement of Material Facts [Doc. 57-1], No. 13. Plaintiff asserts that, after her disputes, she was able to view the Report on NDR's website and that the Report continued to include the inaccurate information about the Citation. Plaintiff's Response to Defendant's Statement of Material Facts [Doc. 64], No. 13; Peeples Dep. [Doc. 53] at pp. 22-23; Sweet Affidavit [Doc. 56] at p. 7.

Because she was unable to use the Report to support her application to AICASA, Plaintiff was forced to defer her medical education by a semester, incurring a deferment fee of $500.00. Plaintiff's Statement of Additional Facts [Doc. 64], No. 34; Peeples Dep. [Doc. 53] at pp. 12, 39. Although Plaintiff was eventually permitted to attend AICASA for one semester, she was not able to continue in the pre-med program because she could not use the Report in support of her application and because AICASA would not accept a background check report from any source

besides NDR. Peeples Dep. [Doc. 53] at pp. 32-33; Complaint [Doc. 1] at ¶¶ 53-54. In addition, NDR's issuance of an inaccurate report and its refusal to correct its reporting in response to Plaintiff's dispute caused Plaintiff to experience significant anxiety, distress, loss of sleep, lack of appetite, frequent crying, and to become an emotional "wreck." Plaintiff's Statement of Additional Facts [Doc. 64], No. 35; Peeples Dep. [Doc. 53] at pp. 37, 42.

### III.    Course of Proceedings and Disposition in the District Court

Plaintiff filed her Complaint in this case on May 4, 2022, alleging that NDR violated two provisions of the FCRA. First, Plaintiff asserted a cause of action under 15 U.S.C. § 1681e(b), alleging that the Report was inaccurate and that it reflected NDR's failure to use reasonable procedures to assure maximum possible accuracy in its reporting. Complaint [Doc. 1] at ¶¶ 88-93. Second, Plaintiff asserted a cause of action under 15 U.S.C. § 1681i, alleging that NDR failed to conduct a reasonable reinvestigation and correct its inaccuracies after she disputed its reporting about the Citation. *Id.* at ¶¶ 94-100.

After discovery, NDR moved for summary judgment. Defendant's Motion for Summary Judgment [Doc. 57] ("Motion"). NDR asserted two principal arguments to support its motion. First, NDR contended that the Report did not fit into the FCRA's definition of a "consumer report" because it was never published to AICASA. *Id.* at pp. 8-9. In this connection, NDR asserted that, when Plaintiff first

requested a background check report, she entered into a non-disclosure agreement with NDR, which precluded her from sharing the Report with any third party, including AICASA. *Id.*

Second, NDR contended that the Report accurately described Plaintiff's criminal history. Motion at pp. 17-20. Specifically, NDR insisted that the Report was accurate in asserting that she had been convicted of a criminal offense, even if that offense was later expunged. NDR also argued that, in response to Plaintiff's dispute, it was accurate for NDR to report the Citation along with the notation that it was expunged. In addition to these two arguments, NDR also made arguments arising from its contention that Plaintiff had not suffered any injuries.

In opposition to NDR's Motion, Plaintiff argued that the Report did fit within the FCRA's definition of a "consumer report" because NDR issued it with the expectation that it would be used in connection with Plaintiff's application to AICASA. Because the report was issued for a purpose covered by the FCRA's "purpose clause," 15 U.S.C. § 1681b(a), it necessarily fit the statutory definition of "consumer report." Plaintiff's Opposition to Motion for Summary Judgment [Doc. 64] ("Opposition") at pp. 7-12. Plaintiff also pointed out that NDR has structured its business around the false pretense that its reports are not for publication to third parties, even though NDR actively solicits business from educational institutions

10

that require NDR's criminal background reports as a condition of admission. *Id.* at 8-9.

Plaintiff also argued that the Report was inaccurate because it was materially misleading about the nature of Plaintiff's official criminal record. Plaintiff specifically refuted NDR's contention that it was accurate to report the Citation and to note that it was expunged. Opposition at pp. 16-21. In this connection, Plaintiff pointed out that the purpose of South Carolina's expungement statute is to remove any reference to an expunged conviction from the public record. *Id.* at 18-19. Plaintiff also pointed out that the Consumer Financial Protection Bureau ("CFPB"), which is charged with making regulations arising from the FCRA, has concluded that it is inaccurate for a CRA to make any report of an expunged criminal record. *Id.*

Plaintiff also addressed NDR's miscellaneous arguments about her injuries by pointing out that she suffered tangible injuries because she had to delay her admission to AICASA because the Report was inaccurate, NDR refused to correct it, and AICASA would not accept a criminal background report from any other source. Opposition at pp. 13-16.

The district court referred NDR's Motion to the magistrate judge, who issued a Report and Recommendation [Doc. 67], which concluded that NDR was entitled to summary judgment on Plaintiff's causes of action under § 1681e(b) and § 1681i.

11

With respect to the § 1681e(b) cause of action, the magistrate judge agreed with NDR's argument that the Report did not meet the FCRA's definition of "consumer report" because it had not been communicated to a third party. Report and Recommendation [Doc. 67] at pp. 11-15. In support of this conclusion, the magistrate judge relied, among other things, upon this Court's decision in *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330 (11th Cir. 2015), as well as district court opinions in *Seckinger v. Equifax Info. Servs., LLC*, No. CV 415-304, 2018 U.S. Dist. LEXIS 50780 (S.D. Ga. Mar. 27, 2018) and *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638 (S.D. Ala. 2007). But the magistrate judge did not reach any questions related to Plaintiff's arguments about the centrality of the FCRA's Purpose Clause in determining whether a document met the definition of "consumer report." Report and Recommendation [Doc. 67] at pp. 14-15 n. 2.

With respect to Plaintiff's cause of action under § 1681i, the magistrate judge concluded that it was reasonable for NDR to respond to Plaintiff's dispute by refusing to omit the Citation from the Report and by adding the notation of "expunged" to the Report's mention of the Citation. Report and Recommendation [Doc. 67] at pp. 20-25. To reach this conclusion, the magistrate judge relied upon several cases from other jurisdictions in which courts had concluded that, for the purposes of federal law, the meaning of the statutory term "conviction" included convictions that had been expunged from the public record. *Id.*

12

The Report and Recommendation did not address NDR's miscellaneous arguments, including its arguments regarding Plaintiff's injuries and damages or its arguments about whether the Report was still available to the public through its website. Report and Recommendation [Doc. 67] at p. 25, n.6.

After Plaintiff filed her Objections to the Report and Recommendation [Doc. 69], the district court decided to adopt the magistrate judge's factual findings and legal conclusions in its Order Overruling Plaintiff's Objections [Doc. 73] ("Order"). The district court specifically held that the magistrate judge was correct in concluding that, according to this Court's previous rulings, a plaintiff could not maintain a cause of action under § 1681e(b) without showing a CRA's allegedly inaccurate report had been published to a third party. Order [Doc. 73] at pp. 12-13. The district court also held that the magistrate judge was correct in concluding that Plaintiff could not maintain a cause of action under § 1681i because the Report was accurate after NDR amended it in response to Plaintiff's dispute and its own reinvestigation. *Id.* at pp. 16-17. The district court declined to treat the CFPB's opinion about expunged criminal records as binding because it was issued in January 2024 and should not have retroactive application. *Id.* at p. 19, n.3.

This appeal followed.

//

13

IV.    **Statement of the Standard of Review**

This Court conducts a *de novo* review of a district court's ruling on a Motion for Summary Judgment under Fed. R. Civ. P. 56. *Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1317-18 (11th Cir. 2015).

Fed. R. Civ. P. 56(c) provides that a court may grant a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing that no genuine issues of material fact exist in light of the pleadings, evidence produced in discovery, and affidavits submitted by the parties. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Similarly, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the parties have met their respective burdens, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making assessments

14

of credibility, and, if the evidence permits inferences, the court must give the benefit of every reasonable inference to the nonmoving party. *Id.* at 255; *see also Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). If reasonable inferences exist that would support a verdict for the nonmoving party, such inferences create genuine issues of material fact. *Carlson*, 787 F.3d at 1317-18.

# SUMMARY OF THE ARGUMENT

Both of the district court's reasons for granting summary judgment to NDR are contrary to law, and its decision should be reversed.

First, the district court erred in concluding that a criminal background report issued by a CRA directly to a consumer cannot constitute a "consumer report" within the meaning of the FCRA, even when both the consumer and the CRA expect that the consumer will use it for a purpose identified in the "Purpose Clause" of 15 U.S.C. § 1681a(d). Through a misreading of case law, the district court understood that the FCRA's definition of "consumer report" included the requirement that the report be published to a third party. But this understanding of the statutory term is inconsistent with both the plain language of the FCRA and with this Court's decisions in *Yang v. Government Emps. Ins. Co.*, 146 F.3d 1320 (11th Cir. 1998) *and Nunnally v. Equifax Info. Servs.*, LLC, 451 F.3d 768 (11th Cir. 2006), both of which establish the fundamental principles governing the meaning of consumer report under the FCRA. The district court's error principally depended upon its reading of *Collins v. Experian Info. Sols., Inc*., 775 F.3d 1330 (11th Cir. 2015), but the FCRA's definition of "consumer report" was not essential to the holding in Collins, and any discussion of that definition in Collins is dicta and cannot contradict the holdings of *Yang* and *Nunnally*. Moreover, the district court's understanding of "consumer report" would have potentially disastrous practical consequences because it would permit CRAs to

16

evade the requirements of the FCRA by structuring their business so that consumers acted as conduits for the transmission of consumer reports to creditors, employers, and other users.

Second, the district court erred in concluded that NDR did not breach its duty to reinvestigate under 15 U.S.C. § 1681i(a) when it declined to remove an expunged conviction from the Report, and, instead, only noted that her 2003 Citation was "expunged." Under this Court ruling in *Erickson v. First Advantage Background Servs.*, 981 F.3d 1246 (11th Cir. 2020), a consumer report is inaccurate if it creates a potential for misunderstanding or is otherwise materially misleading. NDR's Report was inaccurate in this respect because, in light of its express statement that it was based on the public records of South Carolina, it could create the misleading impression that the Citation was still included in those public records. Moreover, NDR's addition of the notation "expunged" did not cure this inaccuracy because, even after that addition, the Report was misleading about whether the Citation was included in the public records of South Carolina. Because the Report remained inaccurate even after NDR's reinvestigation, a reasonable jury could find that NDR violated its duties under § 1681i(a).

**ARGUMENT**

I.    **The FCRA's definition of "consumer report" includes a report issued for any purpose identified in its "Purpose Clause." The district court erred in ruling that, as a matter of law, the Report did not meet the definition of consumer report because undisputed evidence showed that the Report was issued for a purpose covered by the Purpose Clause.**

> A.    *The text of the FCRA and this Court's previous rulings establish that a CRA's report fits within the FCRA's definition of "consumer report" whenever it is prepared for a purpose identified in the Purpose Clause of § 1681a(d).*

The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Fair Credit Reporting Act, 15 U.S.C. § 1681e(b). When a plaintiff asserts a cause of action against a CRA for a violation of § 1681e(b), she must show that the CRA prepared a consumer report that "contained factually inaccurate information, that the procedures it took in preparing and distributing the report weren't 'reasonable,' and that damages followed as a result." *Losch v. Nationstar Mortg.*, 995 F.3d 937, 944 (11th Cir. 2021) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1157, 1160 (11th Cir. 1991) and *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002)).

The term "consumer report" is defined in 15 U.S.C. § 1681a(d). According to this section, and for the purposes of the FCRA, a "consumer report" is:

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is **used or expected to be used or collected** in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

    (A)    credit or insurance to be used primarily for personal, family, or household purposes;

    (B)    employment purposes; or

    (C)    any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a (d)(1) (emphasis added).

Section 1681b(a) defines the permissible purposes for consumer reports beside those enumerated in § 1681a(d)(1). Among other things, this provision permits a consumer report to be issued under the following circumstances:

- "in accordance with the written instructions of the consumer to whom it relates" (§ 1681b(a)(2));

- to a person who "has a legitimate business need for the information" that is "in connection with a business transaction initiated by the consumer" or "to review an account to determine whether the consumer continues to meet the terms of the account" (§ 1681b(a)(3)(F)).

This Court has held that a document meets the FCRA's definition of "consumer report" when it "is made up of three fundamental elements." *Yang v. Government Emps. Ins. Co*., 146 F.3d 1320, 1323 (11th Cir. 1998). According to the *Yang* Court:

First, a "consumer reporting agency" must "communicat[e] . . . information[.]" Second, the "communication of information" must "bear on" any one of a list of factors. Third, the "communication of information" must be "used or expected to be used or collected in whole or in part" for any one of several purposes. For ease of reference, we will refer to the language of the third element as the "Purpose clause."

*Id*. The *Yang* Court also noted that the purposes covered by the Purpose Clause include those identified in both § 1681a(d) and § 1681b(a). *Id*. at 1323-24.

In applying this analysis of the meaning of "consumer report," the *Yang* Court explained that the purpose for collecting or reporting the information in a report is the crucial fact in determining whether it meets the FCRA's definition of consumer report. "Under the plain language of the FCRA, a 'communication of information' is a 'consumer report' if any one of the three components in the Purpose clause is met." *Yang*, 146 F.3d at 1325.

Under the analysis provided in *Yang*, the Report that NDR prepared about Plaintiff's criminal background comes within the meaning of "consumer report" under the FCRA because it was issued for a purpose recognized in § 1681b(a)(3)(F). The Report issued to Plaintiff was a "communication of . . . information by a consumer reporting agency" and it had a "bearing on [Plaintiff's] . . . . character, general reputation, personal characteristics, or mode of living." In addition, the Report was expected to be used for a purpose identified under § 1681b – it was issued to a person who had "a legitimate business need for the information . . . in connection

20

with a business transaction initiated by the consumer." Thus, a report issued by a CRA to a consumer for the purpose of supplementing the consumer's college admission application falls within the general definition of "consumer report" as expressly set forth in § 1681a(d)(1).

Both the magistrate judge and the district court rejected this conclusion about the Report because they read certain cases, crucially this Court's opinion in *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330 (11th Cir. 2015), to hold that a document prepared by a CRA constitutes a "communication of information" only if the document is published to a third party. The magistrate judge and the district court also concluded that publication to the consumer herself does not make a document a "communication of information," even if the CRA and the consumer both intend that the consumer will transmit the document to a third party. Report and Recommendation [Doc. 67] at pp.11-15; Order [Doc. 73] at pp. 12-13. But their reading was erroneous because it is inconsistent with the plain language of the statute and because it is not necessitated by the holding in *Collins*.

Nothing in the plain language of the FCRA requires that the meaning of the word "communication" include the concept of "publication to a third party." The FCRA does not include its own definition of "communication," and, when a statute does not include a specific definition for a particular term, it must be interpreted according to its common meaning. *U.S. Securities & Exch. Comm'n v. Big Apple*

*Consulting USA, Inc.*, 783 F.3d 786, 797 (11th Cir. 2015) (citing *Smith v. United States*, 508 U.S. 223, 228 (1993)).

The common, ordinary meaning of "communication" does not denote or connote "communication to a third party." According to Merriam-Webster's online dictionary, the meaning of "communication" that is relevant here does not necessitate the transmission of information to a third party. Merriam-Webster defines "communication" more broadly, providing that "communication" means "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior." See https://www.merriam-webster.com/dictionary/communication (accessed on May 30, 2024).

Moreover, the plain language of the FCRA is inconsistent with the district court's interpretation of the meaning of "consumer report." The FCRA expressly contemplates that the term "consumer report" applies to documents or compilations of information that CRAs issue only to consumers and not to any third parties. Under 15 U.S.C. § 1681i(a)(6), when a consumer disputes the accuracy of information in a CRA's files, the CRA must provide notice to the consumer of the results of its reinvestigation. The required notice consists of several separate documents, including "a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation." 15 U.S.C. § 1681i (a)(6)(B)(ii). If the district court's understanding of "consumer report" is correct, then the term has

different meanings in § 1681i(a)(6)(B)(ii) and elsewhere in the statute. Courts may not construe statutes this way. *See Patel v. U.S. Attorney Gen.*, 971 F.3d 1258, 1291 (11th Cir. 2020) ("It is a well-established canon of interpretation that we presume the same word is intended to have the same meaning when used in different parts of the same act.") (citing *Environmental Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007)).

This Court has recognized that, in connection with § 1681i(a)(6)(B)(ii), a CRA issues a "consumer report" within the meaning of the FCRA when it communicates information directly to a consumer about the results of the CRA's reinvestigation. *Nunnally v. Equifax Info. Servs, LLC*, 451 F.3d 768 (11th Cir. 2006). The dispute in *Nunnally* began in 2002 when two of the plaintiffs, a married couple, "each requested a credit report from Equifax." *Nunnally*, 451 F.3d at 770. The plaintiffs found errors in their reports and "requested a reinvestigation, but Equifax did not report the results of the reinvestigation" to them. *Id.* The plaintiffs "again requested credit reports in 2004," and, when those reports contained the same errors that had appeared two years earlier, the plaintiffs again requested a reinvestigation. *Id.* This time, Equifax sent each of them a "one-page letter" which noted that the disputed information had been removed from their files." *Id.* "The Nunnallys then paid for copies of their complete files to ensure that the corrections had been made. Neither copy of their consumer files contained inaccurate information." *Id.* A third

plaintiff had an essentially identical exchange with Equifax regarding disputed information in her own account. *Id.* Seeking to represent a class of consumers, the three plaintiffs sued Equifax, alleging that it had violated § 1681i(a)(6) when it "did not send them each a 'complete copy' of their consumer reports following the reinvestigations." *Id.* at 771.

This Court began its analysis by distinguishing between the meanings of "consumer report" and "file" under the FCRA. Examining the express language of the FCRA, this Court concluded that a "file" is all of the information that a CRA has about the consumer, while a report is a collection of information that is "based upon" the file. *Nunnally*, 451 F.3d at 772-73 ("The 'consumer report' referenced in section 1681i(a)(6)(B)(ii) is not the 'consumer's file' because that section states that the required 'consumer report' is 'based upon the consumer's file.'"). On this basis, the *Nunnally* Court held that a communication directed to the consumer about the results of a reinvestigation met the definition of "consumer report" in § 1681i(a)(6)(B)(ii) even if it only included the information that had been corrected. *Nunnally*, 451 F.3d at 772-73.

The *Nunnally* Court also distinguished the meaning of the term "disclosure" from the meanings of "consumer report" and "file." To buttress its conclusion that § 1681i(a)(6)(B)(ii) did not require a CRA to provide a consumer with all the information in the consumer's file, this Court noted that § 1681g provides that "a

24

consumer reporting agency must disclose 'all information in the consumer's file' upon a consumer's request." *Nunnally*, 451 F.3d at 774 (quoting 15 U.S.C. § 1681g (a)(1)). Thus, under the FCRA, a "disclosure" occurs when a CRA communicates to a consumer all of the information in the CRA's file about that consumer. *Nunnally*, 451 F.3d at 774.

The taxonomy of "consumer report," "file," and "disclosure" in *Nunnally* makes it clear that the FCRA defined "consumer report" to include any communication to a consumer that involves something less than all of the information in the consumer's file. Importantly, the analysis in *Nunnally* cannot be squared with the proposition that a "consumer report" can only include a communication of information to a third party. The *Nunnally* Court held that the statutory term "consumer report" includes a communication of something less than a CRA's entire file directly to the consumer herself.

The analysis in *Nunnally* is consistent with the fact that other provisions of the FCRA make specific reference to the issuance of consumer reports to third parties – a reference that would be redundant and meaningless if transmission to third parties is an inherent part of the meaning of "consumer report." In setting forth its definitions of crucial statutory terms, the FCRA defines "consumer reporting agency" as follows:

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly

engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers **for the purpose of furnishing consumer reports to third parties**, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a (f) (emphasis added). If "consumer report" necessarily and always involves the transmission of information to third parties, then there would be no reason to modify "consumer reports" with the phrase "to third parties" in the definition of "consumer reporting agency." Indeed, if the district court's reading of "consumer report" is correct, the phrase "to third parties" becomes mere surplusage, and federal courts must not read statutes in this way. *Nunnally*, 451 F.3d at 773 (citing *FDA v. Brown Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)).

The enumerated exclusions to the FCRA's definition of "consumer report" are also inconsistent with the conclusion that the Report falls outside the definition of "consumer report." Section 1681a(d)(2) specifically identifies certain reports that are excluded from the definition of "consumer report." The following kinds of reports are excluded:

- reports "containing information solely as to transactions or experiences between the consumer and the person making the report" (§ 1681a(d)(2)(A)(i));

- "communication of that information among persons related by common ownership or affiliated by corporate control" (§ 1681a(d)(2)(A)(ii));

- "communication of other information" among the owners or control group of a corporation, as long as such communication is disclosed to the consumer and as long as the consumer has an opportunity to direct that the information not be communicated " (§ 1681a(d)(2)(A)(iii));

- "any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device" (§ 1681a(d)(2)(B)); and

- "any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made, and such person makes the disclosures to the consumer required under section 1681m of this title" (§ 1681a(d)(2)(C))

- Certain other communications specified in § 1681a(o) and (x).

The Report does not fit into any of these expressly enumerated exclusions to the definition of "consumer report.," including the communications specified in § 1681a(o) and (x). As a principle of statutory construction, this Court recognizes that "when a legislature has enumerated a list or series of related items, the legislature intended to exclude similar items not specifically included in the list." *Christian Coalition of Florida, Inc. v. United States*, 662 F.3d 1182, 1193 (11th Cir. 2011); *see also United States v. Castro*, 837 F.2d 441, 442 (11th Cir.1988) ("A general guide to statutory construction states that the mention of one thing implies the exclusion of another; expressio unius est exclusio alterius.") (internal quotation marks omitted). Because Congress did not include a report issued by a CRA directly

27

to a consumer in the list of exclusions set forth in § 1682a(d)(2), the principle of *expressio unius* prohibits the interpretation of § 1681a(d) to exclude that kind of report.

> B.    The district court's interpretation of the meaning of "consumer report" under the FCRA depends upon a misreading of Eleventh Circuit case law.

In reaching its conclusions about the meaning of "consumer report," the district court did not undertake a comprehensive analysis of how that term is used throughout the CRA; it relied solely upon an incidental statement in *Collins* that was not crucial to the holding in that case. In *Collins*, this Court was not presented with any question that required it to determine the meaning "consumer report" for the purposes of the FCRA, and its discussion of that meaning was made only in passing and for the purposes of illustration. As such, Collins' assertions about the meaning of "consumer report" are dicta.

The question presented in *Collins* pertained to a specific requirement of 15 U.S.C. § 1681i(a) that did not require the construction of the term "consumer report." Specifically, as this Court noted, the sole question in *Collins* was:

> whether an allegation of a violation of § 1681i(a), requiring a consumer reporting agency to conduct a "reasonable reinvestigation" of disputed information contained in a consumer's credit file, requires the consumer reporting agency to have disclosed the consumer's credit report to a third party in order for a consumer to recover actual damages.

*Collins*, 775 F.3d 1331.

28

To resolve this question, the *Collins* Court distinguished between a consumer's "file" and a "consumer report." This Court began that distinction by noting that "[a]ccording to the FCRA's definitions, a 'consumer report' is communicated by the consumer reporting agency, while a 'file' is retained by the consumer reporting agency." *Collins*, 775 F.3d at 1335. On the basis of that distinction, the *Collins* Court concluded that the reinvestigation requirement established in § 1681i(a)(1)(A) "addresses the 'completeness or accuracy of any item of information contained in a consumer's *file*.'" *Id.* (quoting § 1681i(a)(1)(A) and adding emphasis). Thus, the *Collins* Court concluded that a CRA's duty to reinvestigate information in its files exists regardless of whether the disputed information has been communicated to anyone in a consumer report. *Collins*, 775 F.3d at 1335.

The discussion of the meaning of "consumer report" in *Collins* was incidental to its ruling about whether a plaintiff could not assert a cause of action under § 1681i(a)(1)(A) until after a CRA issued a consumer report that contained the disputed information. When the *Collins* Court noted that "[a] 'consumer report' requires communication to a third party, while a 'file' does not," it was emphasizing what was absent in the text of § 1681i(a)(1)(A) – any reference to publication to a third party – and it was not making a conclusive or comprehensive interpretation of the meaning of "consumer report" as defined by § 1681a(d).

29

Given its context, the discussion of "communication to a third party" in *Collins* cannot be read to modify or detract from this Court's general discussion of the meaning of "consumer report" in *Yang* or from its taxonomy of statutory terms in *Nunnally*. Both *Yang* and *Nunnally* directly address the meaning of "consumer report," and they do not hold that a communication of information from a consumer's file is a "consumer report" only if it is issued to a third party. The incidental and indirect discussion of "consumer report" in *Collins* does not supersede the clear holdings of *Yang* or *Nunnally*.

In addition to this Court's opinion in *Collins*, the magistrate judge and the district court relied upon several district court opinions from the Eleventh Circuit, but none of these opinions involve the distinctive question that is presented here: whether the term "consumer report" applies to a report that a CRA that issues to a consumer with the expectation that the consumer will use it in her business transaction with a third party. Moreover, none of these opinions are inconsistent with the contention that *Yang* and *Nunnally*, not *Collins*, are the controlling authorities here.

In several cases cited in the Report and Recommendation and/or the Order, the district courts focus on the difference between "disclosures," "files," and "consumer reports," but none of them address the question whether the term "consumer report" covers a report issued directly the consumer for a purpose

30

identified in the Purpose Clause, with the expectation that it will be used in the consumer's transaction with a third party. For example, in *Seckinger v. Equifax Info. Servs., LLC*, No. CV 415-304, 2018 U.S. Dist. LEXIS 50780 (S.D. Ga. Mar. 27, 2018), the plaintiff did not allege that the defendant-CRA ever issued a report to him with the expectation that it would be circulated to a third party. In Seckinger, the plaintiff argued that a "disclosure" of the information in a CRA's file could be characterized as a "consumer report," but that is not the argument that Plaintiff made here. See *Id.* at *15-16. Similarly, in *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638 (S.D. Ala. 2007), the district court's ruling also turned on the difference between a "disclosure" and a "consumer report." In reaching its conclusions about the application of statutory terms, the *Johnson* Court specifically concluded that the challenged report was prepared only for use by the consumer and was not prepared with the expectation that the consumer would use it in a transaction with a third party. *Id.* at 645 (holding that "[r]eports **prepared solely for the consumer** do not constitute 'consumer reports' under the FCRA.") (emphasis added); *see also, Coleman v. Experian Info. Sols., Inc.*, 655 F. Supp. 3d 1285, 1313-14 (N.D. Ga. 2022) (citing *Collins* in its discussion of the distinction between "files" and "consumer reports).

In other case law cited by the magistrate judge and district court, the analysis focused on whether the plaintiffs failed to state claim under § 1681e(b) because they

could not prove that the CRA prepared any reports that contained inaccuracies and that were intended to serve one of the purposes identified in § 1681a(d) or § 1681b(a). *See Bailey v. Equifax Credit Info. Servs.*, No. 1:14-CV-00797-MHC-JCF, 2016 U.S. Dist. LEXIS 196516 (N.D. Ga. Nov. 28, 2016); *Benjamin v. Experian Info. Solutions, Inc.*, 561 F. Supp. 3d 1330, 1341-42 (N.D. Ga. 2021); *Rumbough v. Experian Info. Sols., Inc.*, No. 6:16-cv-1305-Orl-18GJK, 2018 U.S. Dist. LEXIS 234675 (M.D. Fla. Feb. 14, 2018); *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1328 (S.D. Fla. 2011). Accordingly, these cases have no bearing on the question whether the term "consumer report" covers a report issued directly to a consumer for a purpose identified in the Purpose Clause.

C. *The district court's interpretation of "consumer report" is inconsistent with case law from other federal circuit courts.*

There is ample case law from other federal circuits to support Plaintiff's contention that the Report here was a "consumer report" within the meaning of § 1681a(d). The Seventh Circuit analyzed the language of § 1681a(d) and § 1681b to set out its own three-factor test for determining when a report fits within the FCRA's definition of "consumer report:

> a consumer may establish that a particular credit report is a "consumer report" falling within the coverage of the FCRA if: (1) **the person who requests the report** actually uses the report for one of the "consumer purposes" set forth in the FCRA; (2) the consumer reporting agency which prepares the report "expects" the report to be used for one of the

"consumer purposes" set forth in the FCRA; or (3) the consumer
reporting agency which prepared the report originally collected the
information contained in the report expecting it to be used for one of
the "consumer purposes" set forth in the FCRA.

*Ippolito v. WNS, Inc*., 864 F.2d 440, 449 (7th Cir. 1988) (emphasis added). The

particular language of the Seventh Circuit's test does not contemplate that a

consumer report only includes information communicated to a third party,

describing the recipient of the report as "the person who requests the report," a

description that applies to consumers, creditors, and employers alike.

    The Ninth Circuit has taken a similar approach, concluding that:

    The plain language of section 1681a(d) reveals that a credit report will
    be construed as a "consumer report" under the FCRA if the credit
    bureau providing the information expects the user to use the report for
    a purpose permissible under the FCRA, without regard to the ultimate
    purpose to which the report is actually put.

    *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273-74 (9th

Cir. 1990) (citing cases). Other circuits, in applying the FCRA's definition of

"consumer report," also focus on the purpose for the preparation of a report rather

than on the identity of the recipient of that report. *See, e.g., St. Paul Guardian Ins.*

*Co. v. Johnson*, 884 F.2d 881, 885 (5th Cir. 1989) (rejecting the argument that "the

definition of a 'consumer report' under the FCRA depends on the use to which the

information contained therein is put," concluding instead that "the purpose for which

the information was collected governs whether that report is a 'consumer report'

33

under the FCRA."); *Heath v. Credit Bureau of Sheridan, Inc*., 618 F.2d 693, 696 (10th Cir. 1980); *Cavaliere v. Burke*, No. 94-20275, 1995 U.S. App. LEXIS 43258, at *7-8 (5th Cir. Mar. 13, 1995).

District court opinions in other jurisdictions follow these principles. A Nevada district court has provided an extensive analysis of the meaning of "consumer report" under the FCRA in terms that are especially applicable here. *See Mintun v. Equifax Info. Servs., LLC,* 535 F. Supp. 3d 988 (D. Nev. 2021). There, the plaintiff disputed the accuracy of one aspect of a CRA's information about her. After reinvestigating the information, the CRA sent her the notice of its reinvestigation, as required by § 1681i(a)(6)(B), including the "consumer report" identified in § 1681i(a)(6)(B)(ii). The plaintiff alleged that this "consumer report" included inaccuracies, and, like Plaintiff, she brought a claim under § 1681e(b). The CRA argued that the document it sent her could not be classified as a "consumer report" because the language of § 1681a(d) identifies a "consumer report" as a "communication" that is "used or expected to be used" by third parties. *Mintun*, 535 F. Supp. 3d at 993. The *Mintun* Court rejected the CRA's reading after interpreting § 1681a(d) by applying several well-established principles of statutory construction and grammar. Ultimately, the *Mintun* Court concluded that:

> it is the information in the communication, not the communication itself, that must be of the kind that *is used or expected to be used or collected in whole or in part* for the purposes of serving as a favor in credit,

> employment, or insurance decisions or other reasons allowed under the
> FCRA.

*Mintun*, 535 F. Supp. 3d at 994 (emphasis in original). The *Mintun* Court also

elaborated on why it made sense to include reports issued to the consumer within the

definition of "consumer report" – because the FCRA defines "consumer reports" in

terms of the purposes that they serve, not in terms of who receives them.

> By providing Mintun with a limited consumer report based on the
> results of its reinvestigation of her dispute, Experian had a reasonable
> expectation that report would be put to a permissible use under the
> FCRA, like Mintun obtaining credit or exercising her right to have
> Experian include a statement disputing the accuracy or completeness of
> the information if the reinvestigation did not resolve the dispute.

*Id.* at 996; *see also Popik v. American Int'l Mortg. Co*., 936 F. Supp. 173, 176

(S.D.N.Y. 1996) ("If a consumer reporting agency provides a report based on the

expectation that the report will be used for purposes permitted by the FCRA, then

the report is a "consumer report" under the FCRA. The purpose for which the report

is ultimately used is irrelevant to the question of whether the FCRA governs the

report's use and the user's conduct."); *Traveler v. Glenn Jones Ford Lincoln Mercury*

*1987, Inc.*, No. CV-05-0817-PHX-SRB, 2006 U.S. Dist. LEXIS 2631, *9-10 (D.

Ariz. Jan. 24, 2006) (applying the definition of "consumer report" by focusing on

the purpose for which the report will be used instead of the identity of the recipient).

>    D.   *The district court's interpretation of "consumer reports" would*
>         *undermine the ability of the FCRA to regulate consumer reporting.*

Beyond the FCRA's plain language and the judicial analyses of the meaning of "consumer report," there is a practical reason for concluding that district court misinterpreted the statute and the case law: CRAs should not be permitted to evade the requirements of the FCRA by insisting that consumers act as intermediaries for the transmission of consumer reports to creditors, employers, and other entities, including educational institutions like AICASA. The facts of this case show beyond dispute that AICASA and NDR made an agreement under which NDR would provide criminal background reports for all students who were offered admission to AICASA. See Plaintiff's Statement of Additional Facts [Doc. 64], No. 24. But NDR and AICASA structured their agreement so that NDR would issue the reports directly to prospective students, subject to AICASA's requirement that the students convey those reports to AICASA. If this kind of transaction exempts reports from regulation by the FCRA, then CRAs and users will have an open invitation to evade the FCRA's requirements by using consumers as couriers.

There is another practical problem with district court's approach: it would permit CRAs to publish information about consumers that does not fit into any of the categories established by the FCRA. Simply put: if the Report at issue here is not a "consumer report," what is it for the purposes of the FCRA? It is information about a consumer that reflects on her "character, general reputation, personal characteristics, or mode of living" and that was prepared with the expectation that it

would be used in connection with one of the consumer's business transactions. *See* 15 U.S.C. §§ 1681a(d) & 1681b(a). But, in the taxonomy of FCRA terms that this Court recognized in *Nunnally*, it is not a "file," and it is not a "disclosure." Because it is precisely the sort of communication of consumer information that the FCRA was designed to regulate, it must be a "consumer report," and that characterization should not be avoided because a CRA and a user decided to interject the consumer as an intermediary in the communication between them.

## II.    It is materially misleading to report that a consumer has a criminal record when that record has been expunged. The district court erred by concluding that Plaintiff could not prevail on her claim under § 1681i(a) because it was accurate for NDR to report the expunged conviction with the notation that the conviction was expunged because such reporting could create an erroneous impression that Plaintiff's criminal history was still available in public records.

After a CRA has prepared a report about a consumer, it retains a duty "to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (citing 15 U.S.C. § 1681i(a)). To establish a claim for a breach of this duty, a consumer must show that a consumer report "contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry" in the report. *Cahlin*, 936 F.2d at 1160 (emphasis in original). The consumer must also show that she disputed the accuracy of the challenged

37

information with the CRA, that the CRA failed to conduct a reasonable reinvestigation regarding the dispute, and that she was injured by the CRA's breach of its duty to reinvestigate. *Losch v. Nationstar Mortg*., 995 F.3d 937, 944 (11th Cir. 2021).

Here, the district court granted summary judgment to NDR on Plaintiff's claim under § 1681i(a) because it concluded that, as a matter of law, NDR conducted a reasonable reinvestigation after Plaintiff disputed the Report because NDR amended the Report to note that the Citation was expunged. Order [Doc. 73] at pp. 16-17. In reaching this conclusion, the district court agreed with the magistrate judge's conclusion that it is accurate to include an expunged conviction on a criminal background report because an expunged conviction still fits within the meaning of "conviction" for the purposes of federal law. *Id.* at pp. 16-17; Report and Recommendation [Doc. 67] at pp. 20-25. This conclusion was erroneous because it failed to properly apply the standard for accuracy under the FCRA, which this Court set forth in *Erickson v. First Advantage Background Servs. Corp*., 981 F.3d 1246, 1252 (11th Cir. 2020), and because it confused the requirements of 15 U.S.C. § 1681c(a) with the requirements for § 1681i(a).

A.   *Under the FCRA, a consumer report is not accurate if it creates the potential for misunderstanding or is otherwise materially misleading.*

The FCRA imposes a high standard for accuracy. As this Court has explained, "the Fair Credit Reporting Act requires more than just accuracy in consumer

reports—it requires 'maximum possible accuracy' . . . mean[ing] 'greatest in quantity or highest in degree attainable.'" *Erickson v. First Advantage Background Servs.*, 981 F.3d 1246, 1251 (11th Cir. 2020) (quoting Webster's Third New International Dictionary 1396, 1771 (3d ed. 1961)) (citation omitted). Accordingly, a CRA's reporting is accurate for the purposes of the FCRA if it is "both factually correct **and free from potential for misunderstanding**." *Erickson*, 981 F.3d at 1253 (emphasis added).

To determine whether a CRA's reporting meets the FCRA's requirements for accuracy, courts apply an objective standard. *Erickson*, 981 F.3d at 1252. Such an objective standard is "one 'that should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting.'" *Id.* (quoting *Cahlin*, 936 F.2d at 1158). "[W]hen evaluating whether a report is accurate under the [FCRA], we look to the objectively reasonable interpretations of the report." *Erickson*, 981 F.3d at 1252. The application of this objective standard ordinarily presents "a question of fact for the jury to determine." *Bush v. RoundPoint Mortg. Serv. Corp.*, 122 F. Supp. 3d 1347, 1351 n.3 (M.D. Fla. 2015); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) ("Whether technically accurate information was misleading in such a way and to such an extent that [it] can be expected to have an adverse effect is generally a question to be submitted to the jury.") (internal quotation marks omitted); *Gorman*

39

*v. Wolpoff & Abramson, Llp*, 584 F.3d 1147, 1163 (9th Cir. 2009) (The consumer must "convince the finder of fact that the omission of the dispute was misleading in such a way and to such an extent that [it] can be expected to have an adverse effect.") (internal quotation marks omitted); *Saunders v. Branch Banking*, 526 F.3d 142, 150 (4th Cir. 2008) ("[G]iven the evidence before it, the jury could reasonably conclude that [the reporting] was misleading in such a way and to such an extent that it can be expected to have an adverse effect.) (internal quotation marks omitted).

When the objective standard outlined in *Erickson* is applied, a consumer file or report may create a misleading impression or has the potential for misunderstanding when it includes stale information that was changed by a definitive legal ruling. In *Losch*, a plaintiff's consumer report listed a mortgage loan as one of the plaintiff's debts, even though it had been discharged in bankruptcy. The CRA argued that the report was technically accurate because "the discharge is merely an injunction against certain means of enforcing a debt, not an expungement of one's record." *Losch*, 995 F.3d at 945. According to the CRA, "it did nothing wrong by reporting a debt that still existed." *Id.* The Eleventh Circuit rejected this argument resoundingly and concluded that the report was "still factually inaccurate" because, even though "a bankruptcy discharge doesn't 'expunge' a debt," it was nevertheless inaccurate for the report to list information about the mortgage debt as if it were a current fact when that debt had actually been discharged by a judicial

ruling. *Id.* The holding in *Losch* makes clear that a consumer report is still actionable under the FCRA even if it contains technically or historically accurate information in a narrow sense when it is ultimately misleading.

> B.  *A reasonable jury could find that the Report was materially misleading because it created the potential for misunderstanding about whether the public records of South Carolina included any criminal record for Plaintiff.*

When construing the evidence in Plaintiff's favor, a reasonable jury could find that that NDR's reporting was materially misleading as to its "meaning or implication." *Erickson*, 981 F.3d at 1252. Because it stated that it was derived from a search of current public records, the Report created the impression that the Citation was part of Plaintiff's criminal history as reflected in the publicly available criminal records of the State of South Carolina. Adding a notation of "expunged" does not change that impression because it does not preclude the possibility that South Carolina's public records report both the Citation and its subsequent expungement. But such an impression would be false, given the nature of expungement orders under South Carolina law.

The criminal record reported by NDR at issue was subject to a binding expungement order, entered by the Court of General Sessions for the County of Berkeley in South Carolina ("Expungement Order"). Plaintiff's Peeples Dep. [Doc. 53] at pp. 72-73. In that order, the South Carolina judiciary determined that Plaintiff's record be "expunged and destroyed" under S.C. Code § 22-5-910, which

41

eliminates all record of a criminal "arrest and conviction and any associated bench warrant" except for those nonpublic records kept by the South Carolina Law Enforcement Division for the sole purpose of ensuring that no individual violates the "single-use" rule. S.C. Code §§ 22-5-910(A) & 22-5-910(D). The statutory language explicitly forbids the release of expunged records to "any law enforcement agency, court, or other […] person," and further prohibits the release of those records in relation to a Freedom of Information Act request. See S.C. Code § 22-5-910(D); S.C. Code § 34-11-95(b). South Carolina courts understand the state's expungement statutes to "ensur[e] the confidentiality of the nonpublic records." *Young v. Keel*, 431 S.C. 554, 558 (S.C. Ct. App. 2020).

In light of the context provided by South Carolina expungement law, a jury could find that the Report was misleading, before and after NDR added the notation "expunged" to its inclusion of the Citation. Viewed in its entirety, the Report conveys the impression that NDR consulted the currently available public records of South Carolina and found a record of the Citation and that the record also made mention of an expungement. But, given the requirements of South Carolina's expungement law, this is simply not what anyone would find upon examining public records in South Carolina. The expungement order constituted a definitive legal ruling that changed the meaning and implication of the Citation. To report the

42

Citation at all is to ignore the effect of that definitive legal ruling, and this Court has held that such reporting is inaccurate. *See Losch*, 995 F.3d at 945.

Other evidence in the record also would support a jury's finding that NDR was being misleading when it issued the Report and after it amended the Report following its purported reinvestigation. When Plaintiff disputed the Report and its inclusion of the Citation, it informed Plaintiff that it had obtained the court records "via the freedom of information act." Sweet Deposition [Doc. 52] at p. 104. This was a complete falsehood. South Carolina law specifically made any record of the Citation unavailable through Freedom of Information Act requests after the Expungement Order was issued in 2019. See S.C. Code § 22-5-910(D); S.C. Code § 34-11-95(b). Evidence that NDR lied to Plaintiff about the provenance of the Report would certainly support a finding by a reasonable jury that there was an intention to mislead behind the Report.

A recent advisory opinion from the Consumer Financial Protection Bureau explains why a jury should be permitted to determine whether it is misleading for a CRA to report a criminal offense that has been expunged from public records. See Advisory Opinion of the Consumer Financial Protection Bureau, 12 CFR Part 1022, Fair Credit Reporting; Background Screening. The CFPB opined that it is inaccurate to report expunged criminal records because such reporting gives a misleading impression of contents of public records. In particular, the CFPB notes that many

43

CRAs – like NDR – do not undertake their own review of public records but rather rely on vendors that may compile databases of old public record information and do not update to reflect expungements. As the CFPB explained:

> Consumer reporting agencies that report public record information are not using reasonable procedures to assure maximum possible accuracy if they do not have reasonable procedures in place to prevent the inclusion in consumer reports of information that has been expunged, sealed, or otherwise legally restricted from public access in a manner that would prevent the user from obtaining it directly from the government entity that maintains the records. These procedures could include, for example, reporting only newly-gathered information or cross-checking existing data against updated sources so that matters that have been sealed or expunged can be identified and removed. In some instances, consumer reporting agencies may also be able to request lists of expunged matters from the original source and then remove those matters from their databases. In addition, under FCRA section 611(a)(5)(C), consumer reporting agencies must maintain reasonable procedures to ensure that information that is deleted from a consumer's file under FCRA section 611(a)(5)(A) because it is inaccurate or incomplete or cannot be verified does not reappear, except in the limited circumstances specified in FCRA section 611(a)(5)(B). This would include ensuring information does not reappear in situations in which a third-party vendor resupplies information that the consumer reporting agency has already removed.

*Id.* at pp. 11-12 (footnotes omitted). The CFPB and the Federal Trade Commission have successfully pursued this interpretation of the FCRA in several recent cases. *Id.* at pp. 12-13 (citing cases).

The CFPB's Advisory Opinion demonstrates that, when a CRA issues a criminal background report, it is making an express or implied statement about the

contents of the public record. That is especially true here, where NDR's Report professed that it was based upon a review of public judicial records. Sweet Dep. [Doc. 52] at p. 96; Plaintiff's Statement of Additional Facts [Doc. 64], Nos. 29 & 30. In fact, as NDR admitted, its report was derived from a vendor, Tracers, that may have been relying upon a database that included obsolete information about the contents of the public record. See Sweet Dep. [Doc. 52] at 50. These questions about the relationship between a consumer report and the public record are crucial to determining whether the report is misleading, and these are precisely the kinds of questions that must be left to a jury.

The magistrate judge concluded as a matter of law that a jury could not make such a finding, and the district court agreed. Report and Recommendation [Doc. 67] at pp. 20-25; Order [Doc. 73] at pp. 16-18. In the magistrate judge's view, NDR's reporting of the Citation was accurate because "in the context of convictions that have been dismissed, set aside, or arguably intended to be expunged, courts have held that complete removal of the conviction is not required for a report to be accurate under the FCRA." Report and Recommendation [Doc. 67] at p. 20. The district court overruled Plaintiff's objections to this conclusion and noted that NDR did not violate its duties under § 1681i(a) because, after its reinvestigation, it added "expunged" to its notation of the Citation, such an addition made its reporting accurate. Order Overruling Objections [Doc. 73] at pp. 16-18.

45

The district court's ruling is erroneous because both the magistrate judge and the district court misapplied case law from other jurisdictions. The principal case cited by the magistrate judge was *Aldaco v. RentGrow, Inc*., 921 F.3d 685 (7th Cir. 2018), but that case has no application here because it focused on a cause of action under the FCRA that Plaintiff does not assert, and its discussion of accuracy is inapposite for multiple reasons.

In *Aldaco*, the plaintiff had applied to rent an apartment, and the landlord purchased a criminal background report on the plaintiff from a CRA. *Aldaco*, 921 F.3d at 686. The report showed that the plaintiff had pleaded guilty to battery in Illinois state court nineteen years earlier and had been given a diversionary disposition under which the charges against her were dismissed after she completed a term of probation. *Id.* The plaintiff never had this record expunged, however. *Id.* The plaintiff disputed the report, but the CRA did not change it. *Id.* The landlord then denied the plaintiff's application because it determined that her guilty plea disqualified her according to its rental criteria. *Id.*

The *Aldaco* plaintiff's principal claim alleged that the CRA's reporting violated 15 U.S.C. § 1681c(a), which prohibits CRAs from disclosing any record of arrest that is more than seven years old, but which permits the reporting of "records of convictions of crimes" regardless of how long ago they occurred. *See Aldaco*, 921 F.3d at 687. In ruling that the plaintiff could not assert a cause of action under §

46

1681c(a), the Seventh Circuit held that federal law controlled the meaning of the term "conviction" in § 1681c(a), and that, under federal law, the term applied to guilty pleas that were later dismissed pursuant to a diversionary disposition. *Id.* at 687-89.

The *Aldaco* plaintiff also alleged that the CRA violated § 1681e(b) and § 1681i because it did not follow reasonable procedures in it is initial reporting or in its reinvestigation that followed her dispute. The *Aldaco* Court concluded that she could not prove either of these claims because she could not establish a causal connection between any alleged inaccuracy and her damages. *Aldaco*, 921 F.3d at 689-90. As the *Aldaco* Court explained, "[t]he landlord's eligibility criteria disqualified applicants with any criminal record of either battery or assault— regardless of the length of the sentence or any diversionary disposition. Aldaco was convicted of battery, Yardi accurately reported this fact, and the landlord followed its policies by refusing to rent to Aldaco." *Id.* at 690.

For several reasons, *Aldaco* cannot control the disposition of Plaintiff's claim under § 1681i(a). First, *Aldaco*'s discussion of the meaning of "conviction" is completely beside the point in this case because Plaintiff does not assert a claim under § 1681c(a), which includes term "conviction." Second, the facts giving rise to Plaintiff's complaint are entirely different from those in *Aldaco*. Most importantly, Plaintiff's cause of action under § 1681i(a) turns on the accuracy of reporting a

47

criminal record that has been expunged; but the criminal record at issue in *Aldaco* was not expunged. *Aldaco*, 921 F.3d at 686 ("Although Aldaco could have had the battery record expunged, she did not ask the court to do so."). Third, in *Aldaco*, the court decided the plaintiff's causes of action under § 1681e(b) and § 1681i(a) entirely on the issue of causation, and its discussions of accuracy are dicta. Finally, at the time that *Aldaco* was decided, the Seventh Circuit had not adopted the materially misleading standard for determining accuracy under the FCRA. *Aldaco*, 921 F.3d at 689-90 (noting that "[w]e have not addressed whether technically accurate but misleading information qualifies as 'inaccurate' information under the Act"); *see also Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 811 (7th Cir. 2023) (adopting the materially misleading standard).

The other cases cited below are also insufficient to support the district court's ruling. In *Bugoni v. Employment Background Investigations, Inc.*, No. SAG-20-1133, 2022 U.S. Dist. LEXIS 54136 (D. Md. Mar. 25, 2022), a background check report listed a conviction along with a subsequent judicial order that set aside the conviction and dismissed the underlying charge. As in *Aldaco*, the district court did not follow the materially misleading standard for determining accuracy. Moreover, the district court concluded that it was not inaccurate to continue to include the conviction in the CRA's files and reporting because, among other things, Arizona state law did not treat the subsequent order as a complete erasure of the plaintiff's criminal record.

48

The magistrate judge also relied on the decision in *Obabueki v. Choicepoint, Inc.,* 236 F. Supp. 2d 278 (S.D.N.Y. 2002), but, like *Aldaco*, that opinion is inapposite because it was decided on the issue of causation rather than accuracy.[1]

Not only did the district court rely on inapposite case law; it also erred by utterly disregarding the CFPB's Advisory Opinion. The district court decided that the CFPB's opinion was inapplicable because it had not been issued at the time of NDR's alleged violations of the FCRA and because the CFPB did not give its opinion retroactive effect. Opinion Overruling Objections [Doc. 73] at pp. 18-19. But, as noted above, the Advisory Opinion is relevant because it is persuasive authority and because it explains how and why a criminal background report might mislead its users about what is and is not available in the public record. In particular, the Advisory Opinion explains why a jury could find that the Report was misleading even after NDR added the notation "expunged" to its reference to the Citation. Such a notation can still be misleading because it does not accurately reflect what is contained in South Carolina public records. And questions of this kind must be left to a jury. *See Erickson*, 981 F.3d at 1253; *see also Seamans*, 744 F.3d at 865; *Gorman*, 584 F.3d at 1163; *Saunders*, 526 F.3d at 150.

---

[1] The magistrate judge also cited *Dickerson v. New Banner Inst., Inc*., 460 U.S. 103 (1983), but that case had nothing to do with the FCRA. It involved a discussion of the meaning of "conviction" for the purpose of applying 18 U.S.C. § 922(g)(1), which makes it unlawful for a convicted felon to ship, transport, or receive any firearm or ammunition in interstate commerce.

### Conclusion and Relief Requested

The record in this case includes evidence and undisputed facts to show that NDR produced a consumer report about Plaintiff that was materially misleading about whether she was associated with any criminal offenses in the public records of South Carolina; and, after Plaintiff disputed the accuracy of the Report, NDR declined to make corrections that would have cured its inaccuracy. The Report was covered by the FCRA because Plaintiff purchased it and NDR issued it for a purpose identified in the Purpose Clause of § 1681a(d). Consequently, a jury should be permitted to decide whether NDR violated its duties § 1681e(b) and § 1681i(a) and whether Plaintiff is entitled to relief.

Plaintiff asks this Court to reverse the district court's Judgment [Doc. 74] and remand this case to the district court for trial.

Dated: June 5, 2024

*/s/ Levi Y. Eidelman*
Levi Y. Eidelman
**CONSUMER ATTORNEYS**
300 Cadman Plaza West, 12th Flr, Ste 12049
Brooklyn, New York 11201
T: (718) 360-0763
E: leidelman@consumerattorneys.com

David A. Chami
**CONSUMER ATTORNEYS**
8245 North 85th Way
Scottsdale, Arizona 85258
T: (480) 626-2359
E: dchami@consumerattorneys.com
*Attorneys for Appellant Lashonda Peeples*

50

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

**1. Type-Volume**

This document complies with the word limit of FRAP 32(f) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this document contains 12,076 words.

**2. Typeface and Type-Style**

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

Dated: June 5, 2024

*/s/ Levi Y. Eidelman*
Levi Y. Eidelman
**CONSUMER ATTORNEYS**
300 Cadman Plaza West, 12th Flr, Ste 12049
Brooklyn, New York 11201
T: (718) 360-0763
E: leidelman@consumerattorneys.com

*Attorneys for Appellant*
*Lashonda Peeples*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users, or that I will accomplish service by U.S. Mail for those participants that are not registered CM/ECF users.

Dated: June 5, 2024                     */s/ Levi Y. Eidelman*
                                        Levi Y. Eidelman
                                        **CONSUMER ATTORNEYS**
                                        300 Cadman Plaza West, 12th Flr, Ste 12049
                                        Brooklyn, New York 11201
                                        T: (718) 360-0763
                                        E: leidelman@consumerattorneys.com

                                        *Attorneys for Appellant*
                                        *Lashonda Peeples*